IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CHRIS SLAVICK, #A0765881,    )  CIV. NO. 1:18-cv-00290-DKW-KJM
    )
       Plaintiff,    )  ORDER DISMISSING COMPLAINT
    )  WITH LEAVE TO AMEND
    vs.    )
    )
SHAWN COLOTARIO, *et al.*,    )
    )
       Defendants.    )
_____

Before the court is pro se Plaintiff Chris Slavick's prisoner civil rights

Complaint. ECF No. 1. Slavick, who is incarcerated at the Halawa Correctional

Facility (HCF), alleges that HCF and Oahu Community Correctional Center

(OCCC) staff violated his state and federal rights in May and June 2018.[1]

For the following reasons, the Complaint is DISMISSED with leave granted

to amend. *See* 28 U.S.C. §§ 1915(e) and 1915A(a).

_____

[1]Slavick names HCF officers Warden Scott Harrington; Sergeant Shawn Colotario; Sergeant Richard Lopez; Captain Dallen Paleka; Program Administrator Gary Kaplan; Sergeant Adam Lorico, Jr.; Captain R. Aguon; Unit Manager An Uedoi; Officer Keone Limahai; and OCCC Officer Murray as Defendants in their official and individual capacities. Slavick also names the Hawaii Department of Public Safety ("DPS") and HCF in the caption but does not repeat these entities within the Complaint.

# I. **STATUTORY SCREENING**

The court is required to conduct a pre-Answer screening of all prisoners'
pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).  The court must
dismiss a claim or complaint that is frivolous, malicious, fails to state a claim for
relief, or seeks damages from defendants who are immune from suit.  *See Lopez v.
Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621
F.3d 1002, 1004 (9th Cir. 2010).

Screening under §§ 1915(e)(2) and 1915A(b) involves the same standard of
review as that used under Federal Rule of Civil Procedure 12(b)(6).  *Watison v.
Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (screening under § 1915(e)(2)); *see
also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (screening under
§ 1915A).  Under Rule 12(b)(6), a complaint must "contain sufficient factual
matter, accepted as true, to state a claim to relief that is plausible on its face."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).
"Threadbare recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice."  *Id.*  The "mere possibility of misconduct"
or an "unadorned, the defendant-unlawfully-harmed me accusation" falls short of
meeting this plausibility standard.  *Id.* at 678-79; *see also Moss v. U.S. Secret
Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). Leave to amend must be granted if it appears the plaintiff can correct the defects in the complaint. *Lopez*, 203 F.3d at 1130.

## II. **BACKGROUND**[2]

Slavick's factual assertions are strewn throughout the Complaint in no discernible order and his claims are asserted in a hyperbolic, conclusory fashion. Below is a chronological summary of the court's best understanding of Slavick relevant facts and claims.

Slavick alleges that, on May 10, 2018, Defendants Colotario, Lopez, and Murray "targeted" his serious physical injuries when they confiscated his ankle brace, cane, and wrist support before he was transported to the state court. *See* Compl., ECF No. 1, PageID #7 (Count I). He complains that there were violent inmates and gang members in the transport van and state court holding cell, whom he alleges were a serious threat to his safety.

When Slavick returned to HCF, he alleges Colotario, Lopez, and Murray falsely accused him of obstruction, lying, and escape to cover up their allegedly

---

[2]Slavick's facts are accepted as true for purposes of this Order. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

improper confiscation of his medical supports.  He claims they did this to enable

Defendants Warden Harrington and Captain Paleka to confiscate his legal papers

when he was placed in solitary segregation based on these charges.  *See id.*, PageId

#8 (Count II).

Slavick says Colotario, Lopez, and Harrington allowed him to keep 1/3 of

his legal papers in his cell and kept the other 2/3's in storage.  Slavick could

exchange his papers for an equal quantity held in storage, but says they were

consistently returned to him in disarray.  *See id.*, PageID #9-10 (Count III).

Slavick complains that there was no desk or table in segregation, forcing him to

prepare his legal work in an uncomfortable, upright position on the bed, which

allegedly interfered with his ability to timely complete his legal work.  *Id.*

On May 18, 2018, Defendant Uedoi was the disciplinary hearing officer

regarding Slavick's May 10, 2018 charges.  *See id.*, PageID #15-16 (Count V).

Slavick claims Uedoi refused to provide him with the written charges against him,

denied that she had served on a previous, two-person committee against him

before, and abruptly concluded the hearing and left when he challenged her.  Uedoi

says she found Slavick guilty of the charges; Slavick says he was released (on May

24, 2018), because the disciplinary hearing was not held within fifteen days of the

charges.  Slavick alleges Uedoi violated prison rules and his right to due process.

Slavick alleges that Defendant Kaplan failed to tell him that his attorney had scheduled a visit on June 4, 2018. Slavick also states, however, that his attorney never came to the prison. Slavick attended a state court hearing on June 5, 2018, presumably with his attorney. *See id.*, PageID #13 (Count IV).

Slavick says Defendant Lorico threatened to take his cane away for the transport to the June 5, 2018 state court hearing, but it is not clear whether Lorico actually confiscated the cane. *Id.* Lorico apparently wrote Slavick up for arguing, however, as Slavick says he served an additional fourteen days in solitary confinement for these allegedly "false" charges. Slavick alleges Kaplan, Lorico, and Defendant Aguon criminally conspired to violate his rights.

Slavick says Uedoi and Defendant Limahai tried to coerce him to attend a disciplinary hearing on June 8, 2018 (apparently regarding the June 5, 2018 charges). Slavick refused to leave his cell and held a sign to his window stating, "OBJECT TO YOU," because they failed to provide him prior notice of the hearing or discovery. *See id.*, PageId #15-16 (Count V). Limahai allegedly verbally insulted him and Uedoi said that she would hold the hearing without him.

After Uedoi left Slavick's cell, Limahai and Defendant Souza stood outside his (still locked) cell clicking handcuffs and telling Slavick to "cuff up." *See id.*,

PageID #17 (Count VI).  When Slavick refused, Limahai allegedly told him that they would beat and rape him and tried to incite nearby inmates to harass him.

In the early morning of June 9, 2018, Sergeant Allen denied Slavick's request to file a police report about this incident.[3]  *See id.*, PageID 19-20 (Count VII).  At 7:00 a.m., Defendant Lorico told Slavick to "pack-up" to transfer to the "High SHU" (the High Security Housing Unit).  *Id.*  Lorico took Slavick's belongings, including his cane, and Aguon summoned the "mob squad," apparently in case Slavick resisted.  *Id.*  Captain Shook authorized Slavick's cane to be returned to him for the transfer before the extraction team entered Slavick's cell. Slavick's paperwork and belongings were repacked into smaller bags and loaded into the trunk of the car that took him to the High SHU.  Slavick complains this was done out of his sight and that he was not permitted "full access" to his legal papers until he was released from the High SHU on July 8, 2018.  *Id.*

Slavick broadly alleges that Defendants' actions violated the Fifth, Eighth, and Fourteenth Amendments, the Americans with Disabilities Act (ADA), and unidentified criminal statutes.  Slavick seeks a transfer to the Federal Detention Center-Honolulu, declaratory relief, expungement of his disciplinary charges, and damages.

---

[3]Allen is not named as a Defendant.

### III. <u>DISCUSSION</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of his rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### A.     **Rule 8**

Federal Rule of Civil Procedure 8(d)(1) requires a complaint to set forth its claims in a simple, concise, direct manner. *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (affirming complaint's dismissal under Rule 8 as "argumentative, prolix, replete with redundancy, and largely irrelevant"). A court may dismiss a complaint under Rule 8 even if "a few possible claims" can be identified and the complaint is not "wholly without merit." *Id.* at 1179 (stating Rule 8 applies "to good claims as well as bad"); *see also Crawford-El v. Britton*, 523 U.S. 574, 597 (1998) (reiterating that "firm application of the Federal Rules of Civil Procedure is fully warranted" in prisoner cases). Rule 8 prohibits "a pleading that [is]

needlessly long, or a complaint that [is] highly repetitious, or confused, or consist[ing] of incomprehensible rambling." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (citation and internal quotation marks omitted) (gathering cases affirming Rule 8 dismissals).

Slavick's Complaint is a confusing allegation of facts, set forth in no particular chronology, that is replete with legal conclusions and opinions. Slavick indiscriminately refers to constitutional amendments, the ADA, and unidentified criminal statutes without any clear explanation why a particular amendment or statute is relevant to a particular claim. While a complaint need not identify "a precise legal theory," *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1038 (9th Cir. 2016) (quotation omitted), legal conclusions do not suffice, *Iqbal*, 556 U.S. at 678. The court has struggled to piece together the facts and ignore Slavick's opinions and legal conclusions. But Slavick's pleading is so disjointed that it is difficult to be certain that each claim is understood as Slavick intended or to determine whether any particular claim is cognizable. It is unlikely that Defendants will better understand it.

"Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's

ability to administer justice." *Bautista v. Los Angeles Cty.*, 216 F.3d 837, 841 (9th Cir. 2000) (quoting *Anderson v. Dist. Bd. of Trustees*, 77 F.3d 364, 366-67 (11th Cir. 1996)). Allowing a "shotgun pleading" to proceed, such as the present Complaint, can lead to unforeseen and negative consequences. *See McLaughlin v. Castro*, 2018 WL 1726630, at *3 (E.D. Cal, April 10, 2018) (citing *Mason v. Cty. of Orange*, 251 F.R.D. 562, 563-64 (C.D. Cal. 2008)).

Slavick's Complaint does not give Defendants or the court fair notice of his claims. That is, it does "not permit the court to infer more than the mere possibility of misconduct," and therefore fails to state a claim. *Iqbal*, 556 U.S. at 679. Accordingly, it is dismissed with leave to amend. If Slavick chooses to amend, he should directly and simply set out what each Defendant did or failed to do that violated his rights. He must assert when and how each Defendant did so and explain how he was injured as a result of that Defendant's conduct.

To enable Slavick to effectively amend his pleadings, the court sets forth the following relevant legal standards that appear to apply to his claims as they are currently understood. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (explaining that a court should briefly explain a pro se litigant's pleading deficiencies when dismissing a complaint with leave to amend).

## B.    First Amendment

### 1.    *Right of Access to the Court*

Inmates have a "fundamental constitutional right of access to the courts."
*Bounds v. Smith*, 430 U.S. 817, 828 (1977).  To state a denial of access to the
courts, a plaintiff must show that he suffered an "actual injury," i.e., prejudice with
respect to contemplated or existing litigation, such as the inability to meet a filing
deadline or to present a non-frivolous claim.  *Lewis v. Casey*, 518 U.S. 343,
348-349 (1996).  An "actual injury" is one that hinders the plaintiff's ability to
pursue a legal claim.  *Id.* at 351.

There are generally two types of access to the court claims: claims that
invoke a right to assistance and claims that assert active interference with
litigation.  *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on
other grounds by Coleman v. Tollefson*, — U.S. —, 135 S. Ct. 1759 (2015).
Slavick alleges that Defendants actively interfered in three of his cases: (1) *State v.
Slavick*, CR 13-1-1461 (Haw. 1st Cir. 2013); (2) an unidentified "Habeas Petition"
filed on April 18, 2018; and (3) an appeal in *Slavick v. State*, No. CAAP 17-
0000834 (Haw. App. 2017), for which an opening brief was allegedly due.[4]  *See*
Compl.,  ECF No. 1, PageID #9-12.  Slavick also asserts that he may have "future

---

[4]The details of these three cases are scattered throughout the Complaint.

civil cases that will arise depending on how much worse the wrongdoings extend."
*Id.*, PageID #12.

First, it is not apparent that Defendants interfered with Slavick's right of access to the court by limiting the amount of paperwork in his cell. Slavick concedes that he could exchange his papers when necessary, although they were often disordered when exchanged.

Second, Slavick concedes that the criminal charges against him in CR 13-1-1461 were dismissed with prejudice on June 8, 2018. This occurred despite his solitary confinement between May 10 and 24, 2018, and in spite of Defendants' alleged interference. Further, the dismissal of these criminal charges appears to be evidence of a favorable outcome, rather than an actual injury.[5]

Third, if the April 18, 2018 "Habeas Petition" refers to *Slavick v. Harrington*, No. 1:18-cv-00142 SOM-RLP (D. Haw. filed Apr. 18, 2018), that petition was dismissed on May 4, 2018, *before* the alleged interference began. Moreover, No. 1:18-cv-00142 was dismissed for Slavick's failure to obtain appellate authorization to file a second or successive petition, which would have

_____

[5]Further, Slavick was represented by counsel in *State v. Slavick*, Cr. No. 13-1-1461 (also identified as 1PC131001461), who was charged with protecting his rights. And, although Slavick alleges this case was dismissed for malicious prosecution, it was dismissed for a speedy trial violation under HRPP 48. *See* http://www.courts.state.hi.us/legal_references/records/jims.

been the outcome regardless of when it was filed.[6] *See id.*, Order, ECF No. 4; *see also* 28 U.S.C. § 2244(a)(3)(A).

Fourth, the record in CAAP-17-0000834 shows that Slavick's opening brief was timely filed and accepted by the state court on June 25, 2018, while Slavick was in solitary confinement. Slavick filed five documents during the time that he was in segregation and alleges that Defendants interfered in this case.

Finally, Slavick's allegation that Defendants may have interfered with future cases that may arise is patently frivolous. Slavick fails to allege sufficient plausible facts to identify any actual injury to any past, active, or contemplated litigation.

### 2.      *Retaliation*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights,

---

[6]Slavick's previous federal challenge to the same conviction was denied on the merits and affirmed on appeal. *See Slavick v. Sequeira*, No. 1:15-cv-00424 DKW (D. Haw), *certificate of appealability denied,* Cir. App. No. 16-17071 (9th Cir. Mar. 7, 2017).

and (5) the action did not reasonably advance a legitimate correctional goal."

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).[7]

Mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

Slavick summarily concludes that Colotario, Lopez, and Harrington transferred him to solitary confinement on May 10, 2018, in retaliation for his "imminent successful filing to disqualify judge Nakasone and due to the Habeas Petition filed April 18, 2018." Compl., ECF No. 1, PageID #9. This is simply an "unadorned, the defendant-unlawfully-harmed me" allegation that is wholly insufficient to state a claim. *Iqbal*, 556 U.S. at 678-79. Slavick must allege facts that indicate that Defendants were aware of his protected conduct, that it was "the 'substantial' or 'motivating' factor" behind their decision to transfer him to solitary confinement, and that his transfer did not advance legitimate penological interests.

_____

[7]*See also Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997)(for retaliation, prisoner must allege that the type of activity in which he was engaged was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. )

*Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Slavick's claims fall short of this standard.

## C.     Fifth Amendment

The Fifth Amendment applies "only to actions of the federal government – not to those of state or local governments." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981) ). Slavick, a state prisoner complaining of acts by state prison officials, cannot state a claim against Defendants under the Fifth Amendment.

## D.     Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2005). Prison officials must provide prisoners with medical care and take reasonable measures to guarantee their safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See id.*, 511 U.S. at 834.

### 1. Threats and Verbal Harassment

Allegations of threats and verbal harassment standing alone fail to state a colorable constitutional claim under § 1983 and do not violate the Eighth Amendment. *See Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir.1997), *abrogated in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (holding that prison guard's use of "vulgar language" toward a prisoner did not violate the Constitution); *see e.g.*, *Austin v. Terhune*, 367 F.3d 1167, 1171-72 (dismissing allegations of "mere verbal sexual harassment" under the Eighth Amendment); *Blueford v. Prunty*, 108 F.3d 251, 254-55 (9th Cir. 1997) (granting qualified immunity to guard who engaged in "vulgar same-sex trash talk" with inmates).

Slavick's claims that Colotario, Lopez, Murray, Lorico, Limahai, Souza, Aguon, and the "mob squad," threatened him at various times fail to state a claim.

### 2. Failure to Protect

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer*, 511 U.S. at 833; *Cortez v. Skol*, 776 F. 3d 1046, 1050 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

Slavick fails to allege facts that show any Defendant knowingly, and with deliberate indifference to his safety, placed him in an objectively dangerous

situation.  *See Farmer*, 511 U.S. at 834.   That is, Slavick does not allege that the

inmates he was transported with in the van or in the holding cell were unrestrained,

or that he was unprotected by guards.  Nor does he alleged that he was attacked or

harmed by another inmate.  Rather, it appears Slavick merely felt threatened, which

is insufficient to state a claim.

### 3.      *Medical Care*

Deliberate indifference to a prisoner's serious medical needs violates the

Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v.*

*Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by*

*WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A "serious" medical need exists if the failure to treat a prisoner's condition could

result in further significant injury or the "unnecessary and wanton infliction of

pain."  *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104).  A prison

official is deliberately indifferent if he knows that a prisoner faces a substantial risk

of serious harm and disregards that risk by failing to take reasonable steps to abate

it.  *Farmer*, 511 U.S. at 837.

Slavick alleges his medical apparatuses were taken temporarily while he was

in close contact with other inmates in a van and a holding cell, to prevent an

obvious safety risk.  Slavick does not allege that he suffered wanton, unnecessary

16

pain or further, significant injury from the temporary deprivation of these supports. Similarly, being deprived of a desk and chair during a limited period of time while in segregated confinement does not objectively deprive an inmate of the minimal civilized necessities of life or constitute cruel and unusual punishment. *Lopez v. Smith*, 203 F.3d 1122, 1132-33 (9th Cir. 2000).

## E.    Fourteenth Amendment

### 1.    *Equal Protection*

The Fourteenth Amendment's Equal Protection Clause requires the State to treat all similarly situated people equally. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (citing *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). Alternatively, a plaintiff may state an equal protection claim if he shows similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate government purpose. *Vill of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted).

Prisoners do not qualify as a protected class, *Mayner v. Callahan*, 873 F.2d 1300, 1302 (9th Cir. 1989), and, although Slavick alleges "racial hate crimes," he alleges nothing suggesting that he was discriminated against as part of a protected class or intentionally treated differently than other similarly situated inmates.

### 2.     *Due Process*

The Due Process Clause protects against the deprivation of liberty without due process of law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To invoke the protection of the Due Process Clause, a prisoner must first establish the existence of a liberty interest. *Id.* Liberty interests may arise from the Due Process Clause or state law. *Id.* If a protected interest is identified, then, and only then, the inquiry turns to what process is due. *Id.* at 224.

In the prison context, a constitutionally protected liberty interest arises only when a restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-85 (1995); *Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994) (allegations that prison regulations were not followed during disciplinary proceedings, without more, does not violate the Due Process Clause). Inmates generally have no liberty interest in being confined in the general prison population rather than in segregated housing. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir.

2000) (holding that inmate's placement in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life).

Courts have found atypical and significant hardships in a very limited scope of cases. *See, e.g., Wilkinson*, 545 U.S. at 221-24 (holding liberty interests were implicated by indefinite confinement in highly restrictive "supermax" prison, where the inmates were deprived of almost all human contact and were disqualified from parole consideration); *Serrano v. Francis*, 345 F.3d 1071, 1078-79 (9th Cir. 2003) (finding placement of a disabled inmate in segregation unit unequipped for disabled persons without his wheelchair gave rise to a liberty interest). Unusually long periods of segregation in violent, overcrowded or dangerous conditions may also be sufficient to constitute a cognizable due process claim. *See Ramirez v. Galaza,* 334 F.3d 850 (9th Cir. 2003) (noting without deciding that two years in segregation in violent and overcrowded conditions while undergoing forced psychiatric evaluation may constitute "atypical and significant hardship"). "A liberty interest does not arise even when administrative segregation imposes severe hardships, such as denial of access to vocational, educational, recreational, and rehabilitative programs, restrictions on exercise, and confinement to a cell for

lengthy periods of time." *Toussaint v. McCarthy*, 801 F.2d 1080, 1092 (9th Cir. 1986) (internal quotations omitted).

Slavick's allegations do not reflect "atypical and significant hardship." *Sandin*, 515 U.S. at 484. He was in solitary confinement for a limited period of time, makes no comparison with conditions in the general population, and alleges nothing illustrating that the conditions in solitary confinement were atypical and significant. The only "hardships" that he alleges are the lack of a chair and desk and that the lights were extinguished after 10:00 p.m. This does not state a cognizable due process claim.

## F.     ADA

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II of the ADA applies to state prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001). To state a claim under Title II of the ADA, a plaintiff must allege that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or

20

activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*Simmons*, 609 F.3d at 1021 (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)).

Slavick alleges no facts showing that he was excluded from any prison benefit, service, program, or activity, or was otherwise discriminated against on the basis of his stated disability.

## G.    State or Federal Criminal Statutes

Criminal statutes generally do not expressly provide a private cause of action for an individual or other basis for civil liability. *See, e.g., Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (18 U.S.C. §§ 241 and 242 provide no private right of action and cannot form basis for civil suit). Moreover, a private right of action under a criminal statute is rarely implied. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979). Rather, the question of whether to prosecute and what criminal charges to file are decisions vested in the discretion of a prosecutor. *United States v. Batchelder*, 442 U.S. 114, 124 (1979); *see also Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375 (2d Cir. 1973) (prosecution of state officials for alleged violation of inmates' federal civil rights is within the discretion of the U.S. Attorney).

To the extent Slavick alleges that any Defendant violated unidentified state or federal criminal statutes for conspiracy, terroristic threatening, attempted assault, attempted sexual assault, fraud, or on any other basis, he fails to state a claim.

## IV.  LEAVE TO AMEND

Slavick may file an amended complaint on or before October 26, 2018 to cure the deficiencies in his Complaint.  If Slavick elects to file an amended complaint, he must comply with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the District of Hawaii.  Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading.  An amended complaint will supersede the preceding complaint.  *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10.  An amended complaint must be short and plain, comply with Fed. R. Civ. P. 8, and be submitted on the court's prisoner civil rights form.  Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

## V.  **28 U.S.C. § 1915(g)**

If Slavick fails to file an amended complaint, or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  **CONCLUSION**

(1)  The Complaint is DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a colorable claim for relief.

(2) Slavick may file an amended complaint on or before October 26, 2018. Failure to file an amended complaint by October 26, 2018 may result in dismissal of this action with prejudice.

(3)  The Clerk is directed to send Slavick a blank prisoner civil rights complaint form so that he can comply with the directions in this Order.

IT IS SO ORDERED.

DATED: September 24, 2018 at Honolulu, Hawaii.



 /s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

---

*Chris Slavick v. Shawn Colotario, et al.*; Civil No. 18-00290 DKW-KJM; **ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**

*Slavick v. Colotario, et al.*, No. 1:18-cv-00290 DKW-KJM; Order Dismissing Complaint in Part; Scrng '18 Slavick 18-290 (dsm part)